CENTER FOR DISABILITY ACCESS
Mark Potter, Esq., SBN 166317
mark@potterhandy.com
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
Ph: (858) 375-7385
Fax: (888)422-5191

Michelle Uzeta, Esq., SBN 164402
michelleu@potterhandy.com
710 S. Myrtle Ave., #306
Monrovia, CA 91016

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Louis Silvia,**<br><br>         Plaintiff,<br><br>   v.<br><br>**Atria Senior Living, Inc.; Atria Management Company, LLC; Ventas, Inc.; Ventas Aoc Operating Holdings LLC**; and Does 1-10, Inclusive,<br><br>         Defendants. | Case No.  **'16CV0742 GPC RBB**<br><br>**Complaint For Damages And Injunctive Relief For Violations Of**:<br><br>1. Title III of the American's with Disabilities Act, 42 U.S.C. §12182 et seq.;<br>2. The Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq.;<br>3. California Fair Employment and Housing Act, Cal. Gov't Code § 12955 et seq.;<br>4. California Unruh Civil Rights Act, Cal. Civ. Code 51 et seq. and<br>5. California Disabled Persons Act, Cal. Civ. Code § 54.1 et seq. |

1

Plaintiff Louis Silvia ("Plaintiff") complains of Defendants Atria Senior Living, Inc., Atria Management Company, LLC, Ventas, Inc., Ventas Aoc Operating Holdings LLC and Does 1-10, Inclusive (collectively "Defendants"), and alleges as follows:

**INTRODUCTION**

1. Plaintiff Louis Silvia is an individual with physical disabilities who uses a wheelchair for mobility. Plaintiff brings this action to challenge the refusal of Defendants –the owners and operators of the assisted living facility in which he resides– to provide him with transportation services unless and until he transfers from his wheelchair to a fixed seat, in violation of his rights under federal and state law.

2. In acting as herein alleged, Defendants have subjected Plaintiff to discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12182 et seq., the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 et seq., and related California civil rights laws.

3. As the direct and proximate result of Defendants' discriminatory acts and omissions, Plaintiff has been, and will continue to be, prevented and deterred from having full and equal access to, and use and enjoyment of, Defendants' goods, services, facilities, privileges, advantages, and/or accommodations.

4. Through this lawsuit, Plaintiff seeks an injunction requiring Defendants to provide him with full and equal access to their transportation services as required by law. Plaintiff also seeks damages and reasonable attorneys' fees, costs and litigation expenses for enforcing his civil rights.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA and FHAA.

6. Pursuant to pendant jurisdiction, attendant and related causes of action arising out of a common nucleus of operative facts are also brought under California law, including, but not limited to the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955 et seq., the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq. and the Disabled Persons Act, Cal. Civ. Code § 54.1 et seq.

7. Defendants are subject to the personal jurisdiction of this Court because they have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market through ownership and management of multiple assisted living facilities located in California; they derive substantial revenues from California; and/or they engage in other activities, so as to render the exercise of jurisdiction over Defendants by the California courts consistent with traditional notions of fair play and substantial justice.

8. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the following facts: Defendants conduct substantial business in this District, including but not limited to the ownership, operation and management of assisted living facilities in the County of San Diego; Defendants' liability arose in this District; and the acts upon which this action is based occurred in this District.

## PARTIES

9. Plaintiff Louis Silvia is, and at all times relevant herein was, a California resident with physical disabilities. Plaintiff is unable to walk or

stand independently as the result of amputation and a stroke, and uses a wheelchair for mobility. Plaintiff is, and at all times relevant herein was, a "qualified person with a disability" and a "physically disabled person" as those terms are defined under the ADA (42 U.S.C. § 12102), FHAA (42 U.S.C. § 3602(h)), and California law (Cal. Gov. Code § 12926).

10. Defendant Atria Senior Living, Inc. is a Delaware Corporation with its principle place of business in Louisville, Kentucky.

11. Defendant Atria Management Company, LLC is a Delaware Limited Liability Corporation with its principle place of business in Louisville, Kentucky.

12. Defendant Ventas, Inc. is a Delaware Corporation with its principle place of business in Louisville, Kentucky.

13. Defendant Ventas Aoc Operating Holdings LLC ("Ventas") is a Delaware Limited Liability Corporation with its principle place of business in Louisville, Kentucky.

14. Plaintiff is currently unaware of the true identities of Does 1-10, inclusive, and will seek leave to amend his Complaint when the true names, capacities, connections, and responsibilities of these defendants are ascertained.

15. Plaintiff is informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and

omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

## FACTUAL ALLEGATIONS

16. Plaintiff underwent a below the knee amputation of his right leg in 1952.

17. Plaintiff has residual right upper extremity hemiparesis (weakness of the entire right side of his body) resulting from a 2002 cerebral vascular accident (stroke).

18. Plaintiff has diabetic peripheral vascular disease.

19. Plaintiff is significantly limited in his mobility and requires a motorized wheelchair for mobility.

20. Plaintiff has used a motorized wheelchair since 2008.

21. Plaintiff's motorized wheelchair is a "wheelchair" as that term is defined by Department of Transportation ("DOT") regulations.  49 C.F.R. §37.3

22. Plaintiff resides at Atria North Escondido ("Atria"), a Residential Care Facility for the Elderly providing independent living, assisted living and memory care for seniors and people with disabilities.

23. Plaintiff has lived at Atria since September 2008.

24. Atria is located at 1342 North Escondido Boulevard in the City of Escondido, California.

25. Defendant Atria Senior Living, Inc. is an owner, operator, manager, lessee and/or lessor of Atria.

26. Atria Senior Living is one of the nation's leading providers of independent living, assisted living and memory care services, operating in more than 140 locations in 27 states.

27. Defendant Atria Management Company, LLC is an owner, operator, manager, lessee and/or lessor of Atria.

28. Defendant Ventas, Inc. is an owner, operator, manager, lessee and/or lessor of Atria.

29. Defendant Ventas Aoc Operating Holdings LLC ("Ventas") is an owner, operator, manager, lessee and/or lessor of Atria.

30. Among the services provided by Defendants to residents of Atria is transportation to local appointments, errands and events.

31. Defendants own and operate the vehicles in which Atria's transportation services are provided.

32. Plaintiff has used the transportation services provided by Defendants since 2008 for weekly shopping trips, doctor's visits and other outings.

33. From 2008 to mid-November 2015, Plaintiff utilized the transportation services provided by Defendants while seated in his motorized wheelchair without incident. Plaintiff would enter the vehicle using the wheelchair lift and the driver would tie him down in the designated wheelchair securement area using the restraint system provided. During these rides, in addition to being tied down properly, Plaintiff was secured in his wheelchair by a seatbelt, and the motor of his wheelchair was turned off.

34. In mid-November 2015, Helen Patsiouras ("Patsiouras"), the Executive Director of Atria, called Plaintiff into her office and informed him that a "state inspector" told her that "the law said" Plaintiff had to transfer out of his power chair and into a fixed seat on Defendants' vehicles. Patsiouras went on to say that it was "unsafe" for Plaintiff to be in his chair.

35. Patsiouras would not disclose to Plaintiff the name of the alleged state inspector who told her that Plaintiff could not be transported while seated in his wheelchair.

36. Patsiouras would not provide Plaintiff a citation to the law that allegedly required Plaintiff to transfer out of his wheelchair in order to be transported.

37. Patsiouras later told Plaintiff that if he used a manual wheelchair, he could stay in that wheelchair during transport. Patsiouras also told Plaintiff that if he chose to use a manual wheelchair he would be required to have a caregiver accompany him on all of his trips to push him around. On information and belief, Atria would bill Plaintiff approximately $50 per trip for such a service.

38. After he was told by Patsiouras that he would not be permitted to ride the bus while seated, secured and strapped in his motorized wheelchair, Plaintiff was not permitted to ride in the Defendant's vehicle unless he transferred himself to a fixed seat.

39. On or about December 17, 2015, Plaintiff had an appointment with his physician, Timothy Strouse, MD. Dr. Strouse provided Plaintiff with medical documentation confirming his impairments and the fact that it was, and is, not safe for him to transfer from his wheelchair to a fixed seat on Defendants' vehicles. The note stated in pertinent part: *"It is unsafe for [Plaintiff] to [transfer] on his own. Please help accommodate his disability in these situations to avoid falls and unnecessary hospital visits from falls."*

40. Dr. Strouse's medical directive was provided to David Alspach, the Resident Services Director at Altria. After reading the directive, Alspach told Plaintiff not to transfer from his wheelchair anymore. At the time, Patsiouras was not at work.

41. Plaintiff was not required to transfer from his wheelchair to a fixed seat on Defendants' vehicles on Monday, December 21, 2015 and Wednesday, December 23, 2015. On these days, Patsiouras had not yet returned to work.

42. After December 23, 2015, Patsiouras returned to work. Plaintiff was next scheduled to use Defendants' transportation services on Monday, December 28, 2015. Prior to December 28, 2015, Patsiouras called Plaintiff into her office to reiterate that Plaintiff was going to be required to transfer from his wheelchair to a fixed seat on the Defendants' vehicles. In support of her position, Patsiouras showed Plaintiff a Wheelchair Owner's Manual by Invacare, manufacturer and distributor of non-acute medical equipment that states in part:

> *Wheelchair users should not be transported in vehicles of any kind while in wheelchairs. As of this date, the Department of Transportation has not approved any tie-down systems for transportation of a user while in a wheelchair, in a moving vehicle of any type.*
>
> *It is Invacare's position that users of wheelchairs should be transferred into appropriate seating in vehicles for transportation and use be made of the restraints made available by the auto industry. Invacare cannot and does not recommend any wheelchair transportation systems.*

43. On January 19, 2016, Plaintiff had an appointment with Amir Hajimirsadeghi, DPM. Dr. Hajimirsadeghi provided Plaintiff with a letter stating: *"Please keep [Plaintiff] on his power wheelchair during his transportation. He is @ risk of breaking his left ankle; if fall occurs."*

44. Dr. Hajimirsadeghi's letter was provided to Alspach. Neither Alspach nor Patsiouras responded to the letter or discussed its contents with Plaintiff.

45. Multiple times a week since mid-November 2015, with the exception of December 21, 2015 and December 23, 2015, Plaintiff has been required to transfer from his motorized wheelchair to a fixed seat in order to use the transportation services offered by Defendants.

46. In order for Plaintiff to transfer from his wheelchair to a fixed seat on the Defendants' vehicles he is required to negotiate a few feet on his own, something he cannot do without great difficulty and danger of injury. Plaintiff cannot hop on his left leg without extreme risk of falling. Plaintiff cannot use his right arm, due to weakness caused by his stroke, to help support his approximately 210 pound frame. Furthermore, Plaintiff's diabetic peripheral vascular disease requires that Plaintiff exercise extreme care not to injure himself.

47. Plaintiff has not been offered or provided assistance by Defendants in transferring from his motorized wheelchair to the fixed seats in Defendants' vehicles.

48. The experience of being forced to transfer from his wheelchair to a fixed seat every time he needs to go to the store or doctor, or run other errands has caused Plaintiff difficulty, discomfort, anxiety and fear, and has interfered substantially with his use and enjoyment of his housing.

49. Plaintiff relies on Defendants' transportation services to shop for necessities and visit his doctors, and plans to use the services in the foreseeable future. Until Defendants rescind their policy of forcing Plaintiff to transfer from his wheelchair to a fixed seat on Defendants' vehicles, and otherwise conform their services to comply with federal and state anti-discrimination law, Plaintiff will continue to be denied full and equal access

to the goods, services, facilities, privileges, advantages, and accommodations offered by Defendants at Atria, will continue to experience substantial interference with his use and enjoyment of his housing, and will suffer ongoing discrimination and damages as a result.

50. The nature of Defendants' discrimination constitutes an ongoing violation, and unless enjoined by this Court, will result in ongoing and irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law because monetary damages, which may compensate for past unlawful conduct, will not afford adequate relief for the harm caused by the continuation of the wrongful conduct of Defendants and the denial of his rights as herein alleged. Accordingly, Plaintiff is entitled to injunctive relief.

51. An actual controversy has arisen and now exists between the parties concerning their respective rights, duties and obligations under federal and state law. Accordingly, Plaintiff is entitled to declaratory relief.

52. Defendants' duties under federal and state anti-discrimination law are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein. Defendants' refusal to allow Plaintiff to use their transportation services unless and until he transferred from his wheelchair to a fixed vehicle seat was willful and knowing and/or the product of deliberate indifference. On information and belief, Defendants' policy requiring Plaintiff to transfer from his motorized scooter and/or use a manual wheelchair was adopted for the sole purpose of forcing Plaintiff to purchase attendant/caregiver services from Defendant. Accordingly, Plaintiff is entitled to punitive/trebled damages.

//
//
//
//

# CLAIMS FOR RELIEF

## First Cause of Action

## Title III of the Americans with Disabilities Act

## 42 U.S.C. §12181 et seq.

53. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

54. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S. Code § 12182(a).

55. For purposes of Title III, discrimination includes the failure of a private entity to operate a demand responsive transportation system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities. 42 U.S.C. § 12182(b)(2)(C).

56. Atria is a "place of lodging", "service establishment" and "social service establishment", and therefore a place of "public accommodation" for purposes of Title III. 42 U.S.C. §§ 12181(7)(A), (F) and (K).

57. Defendants are private entities that provide demand responsive transportation services, for purposes of Title III. 42 U.S.C. § 12181(3).

58. In acting as herein alleged, Defendants have violated Title III of the ADA and it's implementing Department of Justice regulations. Defendants' unlawful conduct includes, inter alia:

    a. Directly, or through contractual, licensing, or other arrangements, excluding or denying Plaintiff goods,

services, facilities, privileges, advantages, accommodations, and/or opportunities, on the basis of disability. 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202(a);

b. Providing Plaintiff goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals. 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202(b);

c. Utilizing standards or criteria or methods of administration that have the effect of discriminating against Plaintiff on the basis of disability. 42 U.S.C. § 12182(b)(1)(D) and 28 C.F.R. § 36.204;

d. Imposing or applying unnecessary eligibility criteria that screen out or tend to screen out Plaintiff from fully and equally enjoying their goods, services, facilities, privileges, advantages, or accommodations based on disability. 42 U.S.C. § 12182(b)(2)(a)(i) and 28 C.F.R. § 36.301(a); and

e. Failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to Plaintiff as an individual with a disability. 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a).

//
//
//
//

Complaint

59. In acting as herein alleged, Defendants have also violated the DOT regulations implementing Title III of the ADA. Defendants' unlawful conduct includes, <u>inter alia</u>:

    a. Requiring Plaintiff to transfer from his wheelchair to a fixed vehicle seat. 49 CFR §37.165(e);

    b. Failing to use the provided securement system to secure Plaintiff's wheelchair. 49 CFR §37.165(c);

    c. Failing to assist Plaintiff with the use of the securement systems provided. 49 CFR §37.165(f); and

    d. Failing to ensure that Defendants' personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities. 49 CFR §37.173.

60. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188 and 42 U.S.C. § 12205, Plaintiff prays for judgment as set forth below.

//
//
//
//
//
//
//
//
//

## Second Cause of Action
## Fair Housing Amendments Act of 1988
## 42 U.S.C. § 3601 et seq.

61. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

62. In acting as herein alleged, Defendants have committed discriminatory housing practices, in violation of the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3601 et seq. Defendants unlawful conduct under the FHAA includes, inter alia:

    a. Discriminating in the terms, conditions or privileges of housing, or in the provision of services or facilities in connection with such housing. 42 U.S.C. § 3604(f)(2);

    b. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations are necessary to afford an individual equal opportunity to use and enjoy his housing. 42 U.S.C. § 3604(f)(3)(B); and

    c. Coercing, intimidating, threatening, or interfering with Plaintiff in the exercise or enjoyment of rights granted or protected by the FHAA, 42 U.S.C. § 3617.

63. Plaintiff is an "aggrieved person" within the meaning of the FHAA. 42 U.S.C. § 3602(i).

64. Pursuant to 42 U.S.C. § 3613(c), Plaintiff prays for judgment as set forth below.

//
//
//
//

# Third Cause of Action
## California Fair Employment and Housing Act
### California Civil Code §12955 et seq.

65. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

66. In acting as herein alleged, Defendants have committed discriminatory housing practices, in violation of the California Fair Employment and Housing Act (FEHA), Cal. Civ. Code §12955 et seq. Defendants' unlawful conduct under the FEHA includes, inter alia:

   a. Discriminating against Plaintiff on the basis of his disability, Cal. Civ. Code §12955(a); and

   b. Coercing, intimidating, threatening, or interfering with Plaintiff in the exercise or enjoyment of rights granted or protected by FEHA, Cal. Civ. Code §12955.7.

67. Plaintiff is an "aggrieved person" within the meaning of FEHA. Cal. Gov't Code § 12927(g).

68. Pursuant to Cal. Civ. Code § 12989.2, Plaintiff prays for judgment as set forth below.

//
//
//
//
//
//
//
//
//
//

## Fourth Cause of Action
## Unruh Civil Rights Act
## California Civil Code § 51 et seq.

69. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

70. Atria is a business establishment. Accordingly, Defendants must comply with the provisions of the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq.

71. The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code § 51(b).

72. The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

73. The Unruh Act has "been held to apply with full force to the business of renting housing accommodations." Marina Point, Ltd. v. Wolfson, 98 Cal. App. 3d 140, 158 Cal. Rptr. 669, 672 (Ct. App. 1979) vacated, 30 Cal. 3d 721, 640 P.2d 115 (1982).

74. Defendants have violated the Unruh Act by, inter alia, denying, or aiding or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered by Defendants at Atria.

75. Defendants have also violated the Unruh Act by violating Title III of the ADA, as set out in Plaintiff's First Cause of Action.

76. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiff prays for judgment as set forth below.

**Fifth Cause of Action**

**California Disabled Persons Act**

**California Civil Code § 54.1 <u>et seq</u>.**

***<u>(Statutory damages and attorneys' fees only)</u>***

77. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

78. The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, … and privileges of all common carriers … motor vehicles, … motorbuses, streetcars, … or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), …" Cal. Civ. Code § 54.1(a).

79. Defendants, a private entity providing transportation services, must comply with the CDPA.

80. Defendants' acts and omissions, described herein, violate the rights of Plaintiff under the CDPA.

81. A violation of the ADA is also a violation of the CDPA. See Cal. Civ. Code, § 54.1(d).

82. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiff prays for statutory damages and attorneys' fees under Cal. Civ. Code § 54.3(a).

//
//
//
//
//
//

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an injunction pursuant to the ADA, FHAA, FEHA and Unruh Civil Rights Act[1] ordering Defendants to:
   a. Modify their transportation policies so that Plaintiff is no longer required to transfer from his motorized wheelchair to a fixed seat;
   b. Train Atria personnel as necessary to avoid discrimination in the provision of transportation services in the future; and
   c. Take other steps as necessary to ensure Plaintiff is provided full and equal access to the transportation services offered at Atria as required by law;
2. Award Plaintiff general, compensatory, statutory and punitive damages according to proof and in an amount within the jurisdiction of this court;
3. Award Plaintiff attorneys' fees, litigation expenses and costs of suit, as provided by law; and
4. Award such other and further relief as the Court may deem just and proper.

Dated: March 29, 2016                                    CENTER FOR DISABILITY ACCESS

By: *Michelle Uzeta*
Michelle Uzeta
Attorneys for Plaintiff

---

[1] Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.